Kyle McLean (SBN 330580)
Lisa R. Considine (*pro hac vice* forthcoming)
David J. DiSabato (*pro hac vice* forthcoming)
Leslie Pescia (*pro hac vice* forthcoming)
700 Flower Street
Suite 1000
Los Angeles, CA 90017
Telephone: 212-532-1091
Facsimile: 646-417-5967
Email : kmclean@sirillp.com
Email: lconsidine@sirillp.com
Email : ddisabato@sirillp.com
Email: lpescia@sirillp.com
*Attorneys for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIONTE BRADLEY, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>LUXOTTICA OF AMERICA, INC. D/B/A SUNGLASS HUT,<br><br>        Defendant. | Civil Action No.: 24CV2401 L AHG<br><br>**COMPLAINT – CLASS ACTION**<br><br>1. **FRAUD**<br>2. **NEGLIGENT MISREPRESENTATION**<br>3. **BREACH OF CONTRACT**<br>4. **UNJUST ENRICHMENT**<br>5. **VIOLATION OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT**<br>6. **VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW**<br>7. **VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW,** |

**BUS, & PROF. CODE**

**8. VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW**

**JURY TRIAL DEMANDED**

Plaintiff Dionte Bradley ("Plaintiff"), individually and on behalf of all others similarly situated, brings this action against Defendant Luxottica of America, Inc. d/b/a Sunglass Hut ("Sunglass Hut" or "Defendant"), and alleges based upon personal knowledge with respect to himself and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters:

## NATURE OF THE ACTION

1. With the sheer volume of online products being offered, consumers rely on accurate pricing to make informed decisions. Unfortunately, many retailers engage in deceptive and misleading practices by advertising products as "sales" or "markdowns" by showing significantly inflated "reference prices" or "regular prices" that are rarely, if ever, actually charged. These fake reference prices fool consumers into thinking they are getting a great deal at

**CLASS ACTION COMPLAINT**

the "sale" price, when in fact, they have merely been tricked by the retailer, and in reality the consumer is paying the same amount, or even more than, the usual price of the item. The effect of this unlawful tactic is to set consumers' perception of the value of a product at a grossly inflated level, thereby inducing consumers to unwittingly pay more for the product than they might normally pay. Furthermore, researchers have found that when consumers believe that the supposedly reduced price will end soon, they are more likely to buy now, rather than wait or comparison shop, and buy someplace else.[1]  But in many instances, the reference price is not a true discount.

2. Highlighting how these false sales have become a true problem in the marketplace, the Federal Trade Commission ("FTC") created a rule prohibiting the practice. 16 C.F.R. § 233.1. The FTC identified this practice as a form of "deceptive pricing" that denies consumers the value of the bargain that they thought they were receiving.

3. Sunglass Hut has engaged in just such a deceptive pricing scheme. Sunglass Hut advertises perpetual or near perpetual discounts on many of its

---

[1] Patrick Coffee, Thought You Saved $60 on that Vacuum Cleaner? Think Again, Wall St. J. (Aug. 24, 2023), available at: https://www.wsj.com/articles/thought-you-saved-60-on-that-vacuum-cleaner-think-again-c89ce344 (Last accessed December 9, 2024).

**CLASS ACTION COMPLAINT**

products, supposedly offering discounts of up to 50% off Sunglass Hut's self-created, fictitious reference prices. Sunglass Hut represents to consumers that its reference price is the "regular" or "normal" price of the item, which functions as a new and inflated reference point from which consumers discount their "savings" on various products.

4. Sunglass Hut's reference prices are false because Sunglass Hut rarely, if ever, offers the products for the reference price. Instead, the inflated reference prices allow Sunglass Hut to continually advertise "sale" events and product discounts in order to induce consumers into purchasing products. In reality, the "sale" price is the price at which Sunglass Hut regularly sells the product, but the consumer has been tricked into thinking he found a great discount.

5. To illustrate, below is a June 9, 2024 screengrab from Sunglass Hut's website for MK1090 Amsterdam "on sale" for $91.50 from an original price of $183.

**CLASS ACTION COMPLAINT**

1
2
3
4
5
6
7
8
9



10   6.  Below is a screengrab of the same product, taken from Sunglass Hut's

11  website approximately three months later, on September 8, 2024, which still

12  reveals the inflated reference price of $183 and false discount price of $91.50.

13
14
15
16
17
18
19
20
21
22
23

24   7.  Sunglass Hut's practice of falsely inflating reference prices in order to

25  give the illusion of higher value, bigger discounts, and a false sense of time

26  pressure, constitutes false advertising, and is an unfair and deceptive practice

27
28

**CLASS ACTION COMPLAINT**

under California's Consumer Legal Remedies Act ("CLRA") Cal. Civ. Code §§ 1750 *et seq.*

8.  Accordingly, Plaintiff, on behalf of himself and the Classes (as defined below) now seeks to hold Sunglass Hut accountable for its unfair, deceptive, and unlawful policy of displaying false or misleading discount or "sale" prices. Plaintiff seeks to bring claims on behalf of a Nationwide Class and a California Subclass (collectively "Classes") of consumers who purchased falsely discounted products on Sunglass Hut's website and is seeking, among other things, to recover damages and injunctive or declaratory relief ordering Defendant to disgorge all revenues unjustly received from the proposed Classes due to its intentional and unlawful practice of using false reference prices and false discounts.

## PARTIES

9. Plaintiff Dionte Bradley is an individual citizen of the State of California and a natural adult person who resides in San Diego County, California.

10.    Defendant Luxottica of America, Inc. d/b/a Sunglass Hut is a Delaware corporation with its headquarters located at 4000 Luxottica Place in Mason, Ohio. Luxottica of America, Inc. operates more than 1,400 Sunglass Hut retail locations in the United States.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## JURISDICTION AND VENUE

11.      The Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Upon information and belief, the number of class members is over 100, many of whom have different citizenship from Defendant. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

12.      This Court has personal jurisdiction over Defendant because it can be found in and operates in this District, and generally conducts substantial business in the State of California. Defendant has sufficient minimum contacts in California, and/or otherwise intentionally avails itself to the California market through the operation of its e-commerce website within the State of California, knowingly and intentionally shipping goods into the State of California for decades, and a substantial part of the unlawful business practices which give rise to this action occurred in this District.

13.      This Court may exercise personal jurisdiction over Defendant to the fullest extent allowed under the Federal Due Process Clause. Defendant has certain minimum contacts with the State of California. Defendant has and continues to purposefully perform some acts or consummate some

CLASS ACTION COMPLAINT

transactions in the State of California, and Plaintiff's claims arise from, or are connected with, Defendant's transactions. The assumption of jurisdiction by this Court does not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the State of California, the relative convenience of the parties, the benefits and protection of laws of the State of California afforded the respective parties, and the basic equities of the situation.

14.    Defendant operates a website, www.sunglasshut.com, by which it advertises and sells its goods in California. The website is regularly viewed by and used to purchase products by consumers in California.

15.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this action occurred in this District. For example, Plaintiff was in San Diego County, California when he saw the false discount representations on Sunglass Hut's website and placed the order on Sunglass Hut's website after relying on the deceptive advertised price displayed. Sunglass Hut shipped the goods Plaintiff purchased to Plaintiff's home in Lemon Grove, California.

## FACTUAL BACKGROUND

### I.    FALSE REFERENCE PRICING SCHEMES

16.    Consumers' reactions to sales and to false sales are well studied

**CLASS ACTION COMPLAINT**

in academic literature. Research shows that reference prices, such as those used by Defendant, materially impact consumers' behavior. A reference price affects a consumer's perception of the value of the transaction, the consumer's willingness to make the purchase, and the amount of money the consumer is willing to pay for the product.[2]

17.    This deceptive practice involves three elements, most easily shown through an example using a retailer that wants to sell a blue shirt with a market value of $35. First, the retailer advertises an inflated "reference price" or the "strike through price" for that shirt, which the retailer wants the consumer to believe is that shirt's normal price. For this example, that price is $50. The problem is that the retailer has not actually sold the shirt for $50, nor could it do so because the market will not bear such an inflated price when other similar blue shirts are sold for less. Instead that $50 price is fictitious, created by the retailer in order to show the consumer the second element in the fraud: a supposed "discount" off that fictitious reference price. In this example, that amounts to a 30% discount. Then, in the third element, the

---

[2] Urbany, Joel E., William O. Bearden and Dan Weilbaker (1988), "The Effect of Plausible and Exaggerated Reference Prices on Consumer Perceptions and Price Search," Journal of Consumer Research, 15 (June), 95–110; Chandrashekaran, Rajesh (2004), "The Influence of Redundant Comparison Prices and Other Price Presentation Formats on Consumers' Evaluations and Purchase Intentions," Journal of Retailing, 80 (1), 53–66.

**CLASS ACTION COMPLAINT**

retailer presents the consumer with the "new" discounted price of $35 for the blue shirt, which the retailer wanted to sell the shirt for all along. As part of this scheme, the retailer wants the consumer to believe that the shirt is worth $50 and that the consumer is getting a deal by actually paying $15 less, which induces the consumer to make a purchase under the false belief that he is getting a bargain on a more valuable shirt (30% off a $50 product in this example) and creates a false sense of urgency that the purported "discount" or "sale" will end and the consumer will have to pay the "reference price" for the shirt. Using this deception, retailers can even falsely induce consumers to pay prices above the market price, for example $40 for the blue shirt, because the consumer still believes he is getting a deal, i.e., a 20% markdown.

18.     Accurate reference prices play an important role in consumers' ability to compare products because they allow consumers to make informed decisions by comparing one retailer's prices to another. This is especially true where the consumer is comparing similar, though not identical, products such as two white T-shirts. In such circumstances, reference prices increase a consumer's interest in the product by increasing the consumer's estimate of savings offered by one retailer.[3] "[A] higher plausible reference price . . .

---

[3] Blair, Edward A. and E. Laird Landon, Jr. (1981), "The Effects of Reference Prices in Retail Advertisements," Journal of Marketing, 45 (Spring), 61-69.

**CLASS ACTION COMPLAINT**

consistently makes the offer appear to be a better value than if no reference price appears."[4] Therefore, when a retailer advertises its products with inflated reference prices, consumers are harmed because they are denied the ability to accurately compare prices across the market, and they imbue the advertised product with a false sense of value that they would not have developed if the inflated reference price had not been listed.

19.    Unsurprisingly, research shows that consumers prefer to get a bargain. Indeed, "shoppers sometimes expend more time and energy to get a discount than seems reasonable given the financial gain involved," and "often derive more satisfaction from finding a sale price than might be expected on the basis of the amount of money they actually save."[5] The fear of losing such a discount, because of the false impression given the retailer that the discount or sale price will not last forever, often induces the consumer to purchase quickly, without performing comparison shopping.

20.    Studies also show that consumers are driven by internal and external reference prices.[6] Internal reference prices are a consumer's price

---

[4] Urbany, The Effect of Plausible and Exaggerated Reference Prices on Consumer Perceptions and Price Search, *supra* n. 1 at 106.
[5] Darke, Peter and Darren Dahl. "Fairness and Discounts: The Subjective Value of a Bargain." Journal of Consumer Psychology 13, No. 3 (2003): 328–338, at 328.
[6] Mayhew, Glenn E. and Russell S. Winer. "An Empirical Analysis of Internal

**CLASS ACTION COMPLAINT**

expectations based on past experiences, stored in their memory. External reference prices are prices encountered during the shopping experience, such as suggested retail prices or sale tags.[7] Research suggests that consumers adjust their internal value expectations (i.e., internal reference prices) to align with external reference prices they encounter.[8] In addition, for infrequently purchased items, or unique items, consumers may lack an actual internal reference price simply because they have not priced the product previously, and in such situations, consumers rely more heavily on the external reference prices.

21.      Retailers, including Defendant, understand that consumers are vulnerable to perceived bargains. Thus, Sunglass Hut has a substantial financial interest in exploiting consumers' well-known behavioral tendencies by inducing consumers into believing they are receiving a bargain—even when they are not. The phenomena of people disproportionately relying on an initial piece of information when making a decision, known as "anchoring,"[9]

---

and External Reference Prices using Scanner Data." Journal of Consumer Research 19, No. 1 (1992): 62-70, at 68.

[7] *Id*. at 62.

[8] Grewal, Dhruv, Kent B. Monroe, and Ramayya Krishnan. "The Effects of Price-Comparison Advertising on Buyers' Perceptions of Acquisition Value, Transaction Value, and Behavioral Intentions." The Journal of Marketing 62 (1998): 46-59, at 48.

[9] *See* Program on Negotiation, Anchoring Effect, HARV. L. SCH.,

---

**CLASS ACTION COMPLAINT**

is especially relevant in this context. Especially when shopping online, consumers often encounter reference prices as the first, if not the only, insight into a product's value besides the sale price itself. Thus, consumers use the reference price as a baseline upon which to calculate a product's true value.

22.    Deceptive and misleading pricing such as that employed by Defendant causes consumers to pay more than they otherwise would have paid for products. It also misleadingly resets consumers' true value expectations by falsely representing the value of products in order to trick consumers into paying more than the products are actually worth.

23.    In addition to harming consumers, employing false reference pricing disrupts the integrity and fairness that underlies retail markets. When unethical retailers use misleading reference prices, they gain an unfair advantage over honest competitors offering similar products. In the forgoing example, if the dishonest retailer is selling a blue shirt that is purportedly valued at $50 for just $35, and the honest retailer is selling a similar $35 blue shirt for $35, the online consumer, who cannot otherwise evaluate the true value of the shirt, is more likely to buy the supposedly more valuable $50 shirt, rather than the supposedly less valuable $35 shirt. If such unlawful

http://www.pon.harvar d.edu/tag/anchoring-effect ("[T]he anchoring effect, [is] the tendency for the first offer to "anchor" the bargaining that follows in its direction, even if the offer recipient thinks the offer is out of line.").

**CLASS ACTION COMPLAINT**

advertising practices remain unchecked, businesses that adhere to honest practices will continue to be unfairly disadvantaged.

24.    Defendant knew or should have known that the use of false reference prices was misleading consumers to believe that they were receiving a "sale" when, in fact, they were not. Moreover, Sunglass Hut intended for reasonable consumers to understand the "sale" prices to be new prices that Sunglass Hut had reduced from its "regular" or "former" prices. Defendant intentionally failed to disclose to Plaintiff and members of the Classes the truth about its reference prices, i.e. that the prices were fabricated, and Defendant never offered the items at the reference prices during the relevant period. Defendant intentionally sought to convey to consumers that they were receiving a true markdown.

25.    Defendant intentionally enacted a broad pricing scheme designed to mislead customers into believing that the reference prices were the prices at which the advertised product was formerly listed and the prevailing market rate of the advertised product.

## II.    FALSE REFERENCE PRICING VIOLATES BOTH FEDERAL LAW AND STATE LAW

26.    It is well-established that false reference pricing violates federal and state law. Even so, retailers, including Defendant, continue to use the tactic because they know they will be able to increase sales and profits by

**CLASS ACTION COMPLAINT**

tricking consumers into making purchase decisions based on the falsely inflated reference prices. Though the information available to consumers varies between different types of products, consumers frequently lack full information about products and, as a result, often use information from retailers to make purchase decisions.

27.    California law prohibits false reference pricing practices like those used by Defendant. *See* Cal. Bus. & Prof. Code § 17501 (expressly prohibiting false former pricing schemes); *see also* Cal. Civ. Code § 1770(a)(9) (prohibiting a business from "[a]dvertising goods or services with intent not to sell them as advertised"), and Cal. Civ. Code § 1770(a)(13) (prohibiting a business from "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions").

28.    The Ninth Circuit Court of Appeals recognizes the harm that can come from advertising false and deceptive reference prices. In *Hinojos v. Kohl's Corp.*, 718 F.3d 1098 (9th Cir. 2013), the court found that "[m]ost consumers have, at some point, purchased merchandise that was marketed as being 'on sale' because the proffered discount seemed too good to pass up. Retailers, well aware of consumers' susceptibility to a bargain, therefore have an incentive to lie to their customers by falsely claiming that their products have previously sold at a far higher 'original' price in order to induce

**CLASS ACTION COMPLAINT**

customers to purchase merchandise at a purportedly marked- down 'sale' price. Because such practices are misleading—and effective—the California legislature has prohibited them." *Id.* at 1101.

29.    The FTC also recognizes the fraudulent nature of fictitious and artificial sale pricing. The FTC's rules have long included "Part 233—Guides Against Deceptive Pricing" which states in relevant part:

> One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. If, on the other hand, the former price being advertised is not bona fide but fictitious
> -- for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction -- the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects. In such cases, the "reduced price" is, in reality, probably just the seller's regular price. 16 C.F.R § 233.1(a).

The FTC guidance provides several useful examples of such deceptive sales:

> An advertiser might use a price at which he never offered the article at all; he might feature a price which was not used in the regular course of business, or which was not used in the recent past but at some remote period in the past, without making disclosure of that fact; he might use a price

that was not openly offered to the public, or that was not maintained for a reasonable length of time, but was immediately reduced. 16 C.F.R § 233.1(d).

## III.   DEFENDANT USED FALSE REFERENCE PRICING TO DECEIVE ITS CUSTOMERS

30.     Using deceptive pricing tactics, Defendant lures consumers by advertising its products at seemingly discounted "sale" prices compared to significantly marked-up reference prices. These fictitious reference prices are never actually charged, making the "discounts" misleading.

31.     Defendant's advertised discounts are fictitious because the reference prices do not represent a bona fide price at which Defendant previously sold, or offered to sell, the products on a regular basis, for a commercially reasonable period of time, as required by the FTC. In addition, the advertised reference prices were not the prevailing market retail price within the three months (90 days) immediately preceding the publication of the advertised former reference price, as required by California law.

32.     As a direct result of Defendant's actions, all consumers who purchased products that were advertised with false reference prices and/or misleading discounts on Defendant's website have been deceived and have been undeniably harmed, in that they would not have purchased these products but for the misleading pricing. They have suffered an economic injury by being misled into paying more than the products were actually

worth.

33.    Defendant's false pricing scheme has directly harmed all customers who were tricked into buying discounted products on its website. By creating a false perception of significant savings, Sunglass Hut fraudulently inflated demand for its products. This has shifted the demand curve, allowing Sunglass Hut to charge higher prices and generate more sales than would have been possible had it used honest pricing practices.

34.    Consumers, like Plaintiff, were deceived by Defendant's misleading discounts. They did not receive the substantial savings that were advertised, nor were the products actually worth the inflated reference prices. Moreover, consumers would not have purchased the products at the purported "sale" price but for the misleading reference price.

35.    The misleading nature of Defendant's reference prices and discounts was cleverly disguised and could not be detected by a reasonable consumer exercising due diligence, particularly because the deception was hidden over an extended period of time. The only way for a consumer to detect Defendant' deception would be if the consumer meticulously followed the price of the product every day for months, especially for retailers like Defendant, who often sells custom items (i.e., items under its own brand).

36.    Defendant continues to engage in these deceptive practices on its

**CLASS ACTION COMPLAINT**

website by advertising false reference prices and misleading discounts. There is no indication that it will voluntarily cease these tactics. Even if it were to stop temporarily, there is a high risk that it would resume these deceptive practices in the future.

37.    Defendant's actions towards consumers and the general public demonstrate malice, fraud, and/or oppression. Its deceptive practices have had a significant negative impact on the Plaintiff, the Classes of affected consumers, and the public at large.

38.    The advertised reference prices and discounts for Defendant's products on Defendant's website are misleading. The "sale" price is often very close to, if not higher than, the true price for these products. The listed reference price of Defendant's products is inflated and does not reflect the actual selling price.

39.    For example, during the 99-day period from January 1, 2024 through April 9, 2024, the following products have been offered at a "discount," when in fact they were not sold at the reference price at any point during that time period:

| Product Name | Reference Price | Days Sold at Reference Price | Days "On Sale" |
|---|---|---|---|

**CLASS ACTION COMPLAINT**

| FE40017I | $500 | 0 | 98 |
|---|---|---|---|
| CL40197U | $420 | 0 | 98 |
| FE40038U | $480 | 0 | 98 |
| FE40022U | $700 | 0 | 98 |
| Curvy LW40096I | $310 | 0 | 98 |
| CL4005IN | $460 | 0 | 98 |
| CL40242I | $440 | 0 | 98 |
| CL40240I | $440 | 0 | 98 |
| Fendigraphy | $460 | 0 | 98 |
| FE40030I | $290 | 0 | 98 |
| Bold 3 Dots CL4240IS | $1050 | 0 | 98 |
| OO4054 Caveat | $190 | 0 | 98 |
| RB3492 | $206 | 0 | 98 |
| TY7138 | $213 | 0 | 98 |
| HC7114L1148 | $173 | 0 | 98 |
| MK1072 Porto | $140 | 0 | 98 |

40.    The reference chart above contains merely a fraction of those products listed as "discounted" on Sunglass Hut's website when, in fact, they

**CLASS ACTION COMPLAINT**

were not listed any time for the referenced price in the preceding 90 days.

41.     The below screen shot is an example of how Sunglass Hut presents its deceptive pricing to consumers. It shows the HC8352 CD472 listed at a discount price of $119, which reflects approximately 30% savings off of the "reference" price of $170. This screenshot is from February 14, 2024.



42.     Approximately two months later, on April 14, 2024, the HC8352 CD472 was still listed at a supposedly discounted price of $119, reflecting approximately 30% savings off of the "reference" price of $170.



43.     Approximately two months later, on June 16, 2024, the HC8352 CD472 was still listed at a supposedly discounted price of $119, reflecting approximately 30% savings off of the claimed "reference" price of $170.

44.     And just over two more months later, on August 25, 2024, the HC8352 CD472 was still listed at a supposedly discounted price of $119, reflecting approximately 30% savings off the claimed "reference" price of –

22

**CLASS ACTION COMPLAINT**

still - $170.



45.     For a significant and uninterrupted period of time over several months, Sunglass Hut ran what appeared to be sales on many of its products. These supposed discounts were often substantial, reaching up to 50%. Even though the exact discount amount might fluctuate slightly, the products were advertised as on "sale;" however, all or nearly all the advertised sale products are never actually offered for purchase or sold at the reference price.

## IV.    PLAINTIFF FELL VICTIM TO DEFENDANT'S DECEPTIVE PRACTICES

46.     Plaintiff is, and at all relevant times has been, a resident and citizen of the State of California. On or around June 10, 2024, while browsing Defendant' website, Plaintiff saw an advertisement boasting significant "savings" on various products.

**CLASS ACTION COMPLAINT**

47.     Defendant's website presented an original marked-through price, which was the reference price, to the right of the lower "sale price." The below image represents what Plaintiff saw when purchasing the product:



48.     After seeing the reference price of $47, Plaintiff specifically chose to purchase the product because Plaintiff believed he was receiving a significant discount on the product he had chosen. Because he was interested in the product and felt that the discounted price would likely not last, and that he was getting a significant bargain on the product, Plaintiff chose to immediately move forward with purchasing it. As a reasonable consumer, he trusted that the products had a value commensurate with the reference price. Thus, the advertised "sale" appeared to be a genuine discount.

49.     Relying on the advertised savings, Plaintiff added the products

**CLASS ACTION COMPLAINT**

to his cart and completed the purchase. A copy of the receipt is attached hereto as **Exhibit A**.

50.    Unbeknownst to Plaintiff, Sunglass Hut rarely, if ever, offered its products at the advertised "regular" reference prices, and did not do so for the product Plaintiff purchased at any time in the 90 days prior to that purchase. Simply put, Defendant intentionally deceived Plaintiff. The actual value of the product purchased did not match the inflated reference price Plaintiff was led to believe was the true value of the glasses. Thus, the advertised "sale" wasn't a deal, or even a sale, at all.

51.    Defendant's inflated reference prices and misleading discounts were significant and material misrepresentations that directly influenced Plaintiff's purchase. Plaintiff relied on this false information in good faith. Had Plaintiff known the truth, he would not have bought the product for the price that he did.

52.    Defendant's misrepresentations were material because a reasonable consumer relies on such information when making purchasing decisions.

53.    As a direct consequence of Defendant' actions, Plaintiff was financially harmed. He would not have purchased the product at the same price absent Defendant' misrepresentation. The advertised discounts were

illusory, and the products were not worth the reference price listed by Defendant, as Plaintiff was led to believe.

54.    Moreover, Plaintiff was damaged because Defendant's false pricing scheme inflated the true market value of the item Plaintiff purchased. Even though Defendant's false pricing scheme is pervasive on its website, not every advertised sale is in fact false, and as such, without substantial effort, Plaintiff and other consumers cannot know which sales are false and which are true. Thus, Plaintiff is susceptible to this reoccurring harm because he cannot be certain that Defendant has corrected the deceptive pricing scheme, and Plaintiff desires to shop at Defendant's website in the future. Plaintiff does not have the resources to always (or even regularly) determine whether Sunglass Hut is complying with state and federal law with respect to its pricing practices by watching the price over the course of several months.

55.    Plaintiff has the legal right – now and in the future – to expect truthful and accurate information from Defendant regarding advertised prices and discounts. Plaintiff, and the other members of the Classes, will be harmed if, in the future, they are left to guess as to whether Sunglass Hut is providing a legitimate sale, and whether products are actually worth the amount that Defendant is representing. If Plaintiff were to trust that Defendant has reformed its pricing practices and were to purchase again from Defendant, he

would have no way of knowing if the advertised discounts were legitimate. Plaintiff continues to be interested in purchasing products that are sold by Defendant and offered at discounted prices, but he will be unable to trust and rely on Defendant's website pricing. Absent injunctive relief, Plaintiff cannot know whether Defendant's reference prices represent true former prices, and the true value of the item, or inflated reference prices employed in order to deceive customers into believing that a legitimate discount is being offered. Thus, Plaintiff will be harmed on an ongoing basis and/or will be harmed once or more in the future.

56.    The deceptive practices described herein are not limited to the specific product Plaintiff purchased or categorical group of products. The misleading advertising and sales tactics employed by Sunglass Hut are systematic and widespread across its entire website, impacting customers nationwide.

## V.    CLASS DEFINITION AND ALLEGATIONS

57.    Plaintiff brings this action pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of himself and on behalf of all other persons similarly situated.

58.    Plaintiff proposes the following Class definitions, subject to amendment as appropriate:

**CLASS ACTION COMPLAINT**

**Nationwide Class (the "Nationwide Class" or "Class")**

All individuals who, within the applicable limitations period, purchased from the Defendant's website one or more products that were advertised or promoted by displaying or disseminating a reference price or discount for an item that was not advertised for sale at the reference price at any point in the 90 days preceding their purchase.

**California Subclass ("California Subclass" or "Subclass")**

All individuals who, within the applicable limitations period, purchased from the Defendant's website one or more products that were advertised or promoted by displaying or disseminating a reference price or discount for an item that was not advertised for sale at the reference price at any point in the 90 days preceding their purchase.

59.     Excluded from the Class and Subclass (collectively "Classes") are Defendant, their parents, subsidiaries, affiliates, officers and directors, and judicial officers and their immediate family members and associated court staff assigned to this case.

60.     Plaintiff reserves the right to modify or amend the definitions of the proposed Classes before the Court determines whether certification is appropriate.

61.     The proposed Classes meet the criteria for certification under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3).

62.     **Numerosity:** This action is appropriately suited for a class

**CLASS ACTION COMPLAINT**

action. The members of the Classes are so numerous that the joinder of all members is impracticable. Upon information and belief, the proposed Classes contain well over 100 members, and likely thousands of individual purchasers who have been damaged by Defendant's conduct as alleged herein, the identity of whom is within the knowledge of Defendant and can be easily determined through Defendant's records.

63.    **Commonality:** This action involves questions of law and fact common to the Classes. The common legal and factual questions include, but are not limited to, the following:

a.    Whether Defendant made false or misleading statements of fact in its advertisements;

b.    Whether Defendant's policies and actions regarding its advertising were unfair, deceptive, or misleading;

c.    The accuracy of Defendant's advertised reference prices and discounts;

d.    Whether Defendant breached their contract with Plaintiff and the Class members;

e.    Whether Defendant were unjustly enriched as a result of its actions with respect to reference pricing and discounts advertised;

f.    Whether the alleged conduct of Defendant violates California Civil Code §§ 1750 *et seq*., California Business & Professions Code §§ 17500 *et seq*., California Business & Professions Code §§ 17501 *et seq* and/or California Business & Professions Code §§ 17200 *et seq*.

**CLASS ACTION COMPLAINT**

g.    Whether Plaintiff and the members of the Classes have suffered injury and have lost money or property as a result of such false or misleading discounts and reference prices;

h.    Whether Defendant should be enjoined from further engaging in the misconduct alleged herein.

i.    Whether Plaintiff and the members of the Classes are entitled to declaratory and injunctive relief and the nature of that relief.

64.    **Typicality:** Plaintiff's claims are typical of the claims of the members of the Classes, because, *inter alia*, Plaintiff and all members of the Classes purchased Defendant's products advertised at a discount on Defendant's website. Moreover, Plaintiff's claims are typical of the Class members' claims because Plaintiff is advancing the same claims and legal theories on behalf of herself and all members of the Classes. In addition, Plaintiff is entitled to relief under the same causes of action and upon the same facts as all other members of the proposed Classes.

65.    **Adequacy:** Plaintiff will fairly and adequately represent and protect the interests of the members of the Classes and has retained competent counsel experienced in complex litigation and class action litigation. Plaintiff has no interests antagonistic to those of the members of the Classes and Defendant has no defenses that are unique to Plaintiff.

66.    **Superiority:** A class action is superior to other methods for the

fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual class members is relatively small compared to the burden and expense that would be created by individual litigation of their claims against Defendant. It would be virtually impossible for a member of the Classes, on an individual basis, to obtain effective redress for the wrongs done to him or her. Further, even if the members of the Classes could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase delay and expense to all parties and the court system arising from such individual claims. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no management difficulties under the circumstances here.

67.    Plaintiff seeks monetary damages, including compensatory damages on behalf of the Classes, and other equitable relief on grounds generally applicable to the Classes as a whole and to the public. Unless a Class is certified, Sunglass Hut will be allowed to profit from its unfair and unlawful practices, while Plaintiff and the members of the Classes will have suffered damages. Unless a Class-wide injunction is issued, Sunglass Hut will likely

**CLASS ACTION COMPLAINT**

continue to benefit from the violations alleged, and the members of the Classes and the general public will likely continue to be victimized.

68.    Sunglass Hut has acted and refused to act on grounds generally applicable to the Classes, making final injunctive relief appropriate with respect to the Classes as a whole.

69.    All applicable statutes of limitations have been tolled by the delayed discovery doctrine. Plaintiff and members of the Classes could not have reasonably discovered Defendant's practice of running perpetual and/or extended sales, based on deceptive reference prices and deceptive sale prices, at any time prior to commencing this class action litigation.

70.    A reasonable consumer viewing Sunglass Hut's website on multiple occasions would simply believe that a product just happens to be on sale when the consumer is on the website. Short of visiting and checking the website for months continuously or creating automated means of recording the price over a substantial period of time, a reasonable consumer would not suspect that Defendant's sales and pricing practices were false or misleading. Nor would a reasonable consumer be able to ascertain the true value of the products being sold absent extensive investigation, which reasonable consumers would not be on notice to have to do.

71.    Plaintiff did not learn of Defendant's deceptive practices alleged

**CLASS ACTION COMPLAINT**

herein until shortly before retaining counsel in this action.

72.     As a result, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

## CAUSES OF ACTION

## COUNT I
## FRAUD – INTENTIONAL MISREPRESENTATION AND OMISSION
**(On behalf of Plaintiff and the Class)**

73.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1–72 as if fully set forth herein.

74.     Defendant made false and misleading statements of fact and material omissions concerning the existence reference prices and the amounts of price reductions. These representations were false because the false reference prices advertised in connection with products offered on the website misled, and continue to mislead, consumers into believing the products were previously sold on the website at the higher reference prices, when in fact they were not. Defendant knew that these representations were false at the time that it made them and/or acted recklessly in making the misrepresentations.

75.     Defendant had a duty to accurately disclose the truth about its pricing information, including that the reference prices advertised on the website were not truly former prices and that the "discount" price advertised was not truly a discount. Reasonable consumers were likely to be deceived,

**CLASS ACTION COMPLAINT**

and were deceived, by Defendant's failure to disclose material information.

76.     Defendant knew that the items Plaintiff and the members of the Class purchased had rarely, if ever, been offered or sold on the website at the higher reference price in the recent past.

77.     Defendant's representations were made with the intent that Plaintiff and the members of the Class would rely on the false representations and spend money they otherwise would not have spent, purchase items they otherwise would not have purchased, and/or spend more money for an item than they otherwise would have absent the deceptive pricing scheme.

78.     Defendant employed this scheme in order to incentivize consumers with the sole intent of maximizing profits to the detriment of those same consumers.

79.     Defendant intended that Plaintiff, and all members of the Class, rely on its false representations. Plaintiff and all members of the Class reasonably relied on Defendant's representations. Absent Defendant's misrepresentations, Plaintiff and the members of the Class would not have purchased the items from Defendant, or, at the very least, they would not have paid as much for the items as they ultimately did. Plaintiff's and the Class members' reliance was a substantial factor in causing their harm.

80.     Had the true reference price not been omitted, Plaintiff and the

**CLASS ACTION COMPLAINT**

members of the Class reasonably would have behaved differently. Among other things, they would not have purchased the items they purchased from Defendant or, at the very least, would not have paid as much for the items as they ultimately did.

81.    As a direct and proximate result of the above, Plaintiff and the members of the Class have suffered damages because: (a) they would not have purchased Defendant's products if they had known that the representations were false, and/or (b) they overpaid for the products because the products were sold at a premium price due to the misrepresentations.

82.    Plaintiff and the members of the Class are also entitled to punitive or exemplary damages. Defendant, through senior executives and officers, undertook the illegal acts intentionally or with conscious disregard of the rights of Plaintiff and the Class, and did so with fraud, malice, and/or oppression.

83.    Based on the allegations above, Defendant's actions were fraudulent because Defendant intended to and did deceive and injure Plaintiff and the members of the Class. Based on the allegations above, Defendant's conduct was made with malice because Defendant acted with the intent to cause and did cause injury to Plaintiff and all members of the Class, and because Defendant willfully and knowingly disregarded the rights of Plaintiff

**CLASS ACTION COMPLAINT**

and all members of the Class.

## COUNT II
## NEGLIGENT MISREPRESENTATION
### (On behalf of Plaintiff and the Class)

84.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 – 83 as if fully set forth herein.

85.     As alleged more fully herein, Defendant made false or misleading statements and/or material omissions of fact concerning the existence of and the amounts of price reductions because Defendant falsely represents the products as on sale, when in truth the reference price was a fictitious price, rendering the purported "sale" a fictitious discount. When Defendant made these misrepresentations, it knew or should have known that they were false. Defendant had no reasonable grounds for believing that these representations were true when made.

86.     By choosing to advertise a reference price, Defendant had a duty to accurately disclose the truth about its pricing, including the fact that the reference prices advertised and published on the website were not truly former prices and that the "discount" price advertised was not a true discount.

87.     Defendant knew its sales were falsely advertised with a false reference price. Defendant also knew or should have known that the reference prices were not the prevailing market prices or true value of the products.

**CLASS ACTION COMPLAINT**

Defendant further knew that the items Plaintiff and the Class purchased had rarely, if ever, been offered or sold on the website at the false reference price.

88.     Defendant had no good faith or reasonable basis to believe that its representations were true when made.

89.     Defendant's representations were made with the intent that Plaintiff and the members of the Class rely on the false representations and spend money they otherwise would not have spent, purchase items they otherwise would not have purchased, and/or spend more money for an item than they otherwise would have absent the deceptive pricing scheme.

90.     Class-wide reliance can be inferred because Defendant's misrepresentations were material, i.e. a reasonable consumer would consider them important in deciding whether to buy Defendant' products.

91.     Defendant's misrepresentations were a substantial factor and proximate cause in causing damage and losses to Plaintiff and the members of the Class.

92.     Defendant engaged in this fraud to the Plaintiff and the Class members' detriment to increase Defendant's own sales and profits.

93.     Plaintiff and the members of the Class reasonably relied on Defendant's representations. Absent Defendant's misrepresentations, Plaintiff and the members of the Class would not have purchased the items

**CLASS ACTION COMPLAINT**

they purchased from Defendant, or, at the very least, they would not have paid as much for the items as they ultimately did. Plaintiff and the Class members' reliance was a substantial factor in causing them harm.

94.    Had the omitted information been disclosed, Plaintiff and the members of the Class reasonably would have behaved differently. Among other things, they would not have purchased the items they purchased from Defendant or, at the very least, would not have paid as much for the items as they did.

95.    As a direct and proximate result of the above, Plaintiff and the members of the Class have suffered damages because they would not have purchased Defendant's products if they had known that the representations were false, and/or they overpaid for the products because the products were sold at a price premium due to the misrepresentations.

## COUNT III
**BREACH OF CONTRACT**
**(On behalf of Plaintiff and the Class)**

96.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1–95 as if fully set forth herein.

97.    Defendant offered products for sale to Plaintiff and the members of the Class under the terms advertised on Defendant's website.

98.    The terms of Defendant's offer provided that Defendant would

**CLASS ACTION COMPLAINT**

sell Plaintiff and the members of the Class products that have a market value equal to the reference prices displayed. The terms also required that Defendant provide Plaintiff and the members of the Class with the discount listed on Defendant's website.

99.     The specific discount was a material term of each contract.

100.    The terms of the offer also provided that Plaintiff and the members of the Class would pay Defendant for the products purchased.

101.    Plaintiff and the members of the Class accepted Defendant's offer and paid Defendant for the products they ordered, thereby satisfying all conditions of their contracts.

102.    Defendant breached the contracts with Plaintiff and the members of the Class by failing to provide products that had a market value equal to the reference price displayed on its website, and by failing to provide the promised discount.

103.    As a direct and proximate result of Defendant's breaches, Plaintiff and the members of the Class were deprived of the benefit of their bargained-for exchange, and have suffered damages in an amount to be established at trial.

**COUNT IV**
**UNJUST ENRICHMENT**
**(On behalf of Plaintiff and the members of the Class)**

**CLASS ACTION COMPLAINT**

104.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1–103 as if fully set forth herein.

105.    Plaintiff brings this claim in the alternative to the contract-based claims, including her breach of contract claim.

106.    Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

107.    Plaintiff and the members of the Class conferred a benefit on Defendant, which Defendant knew about, when it initiated its false pricing scheme.

108.    Plaintiff and members of the Class were, and many continue to be, consumers of Defendant's products. They reasonably believed that Defendant would not falsely advertise discounted products. Plaintiff and members of the Class suffered financial losses when they were deceived into purchasing products that they reasonably believed to be on sale. By inflating the reference price and then offering a "sale," Defendant creates a false sense of urgency, a misleading perception of value, and a misleading perception of savings, tricking customers into paying more than they should or would for Defendant's product. Customers who rely on advertised sales to make informed decisions are deceived into paying a premium for the product and do not receive a product worth as much as Defendant represented the product

to be worth.

109.    This deceptive practice undermines fair competition and allows Defendant to profit unfairly. Defendant has accepted and retained these benefits as a result of its sales of merchandise offered at a false discounted price, making Defendant's retention of them unjust.

110.    By its wrongful acts and omission described herein, including engaging in deceitful and misleading advertising practices by using false discounts to lure in consumers to purchase products they would not have otherwise purchased or for amounts they would not have otherwise paid, Defendant was unjustly enriched at the expense of Plaintiff and the members of the Class.

111.    Plaintiff's and the Class members' detriment, and Defendant's enrichment, were related to and flowed from the wrongful conduct alleged in this Complaint.

112.    Defendant has profited from its unlawful, unfair, misleading, and deceptive practices at the expense of Plaintiff and the members of the Class. It would be inequitable for Defendant to retain the profits, benefits, and other compensation obtained from its wrongful conduct described herein.

113.    Plaintiff and the members of the Class have been damaged as a direct and proximate result of Defendant's unjust enrichment.

114.     Plaintiff and the members of the Class are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant.

115.     As a direct and proximate result of Defendant's wrongful conduct and unjust enrichment, Plaintiff and the members of the Class are entitled to restitution of, disgorgement of, and/or imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendant for its inequitable and unlawful conduct.

**COUNT V**
**VIOLATION OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT ("CLRA")**
**Cal. Civ. Code §§ 1750 *et seq.***
**(On behalf of Plaintiff and the California Subclass)**

116.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1–115 as if fully set forth herein.

117.     Plaintiff brings this claim individually and on behalf of the members of the California Subclass against Defendant.

118.     Plaintiff and all members of the California Subclass are "persons" and "consumers" as defined in Cal. Civ. Code § 1761(d).

119.     Defendant is a "person" as defined in Cal. Civ. Code § 1761(c).

120.     The products purchased by Plaintiff and the members of the California Subclass from Defendant are "goods" as defined by Cal. Civ. Code

**CLASS ACTION COMPLAINT**

§ 1761(a).

121.     Plaintiff's and the California Subclass members' purchases from Defendant constitute "transactions," as defined by Cal. Civ. Code § 1761(e).

122.     The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770.

123.     As alleged herein, Defendant engaged in unfair and deceptive acts or practices insofar as they made and disseminated false and misleading statements of facts in its advertisements to class members by using false reference prices and advertising fake discounts in violation of the CLRA. *See Id.*

124.     Defendant's conduct as described herein was and is in violation of the CLRA. Defendant's conduct violates at least the following enumerated CLRA provisions:

    a. Cal. Civ. Code § 1770(a)(5): Representing that goods or services have characteristics, uses, benefits, or quantities that they do not have or that a   person has a sponsorship, approval, status, affiliation, or connection that the person does not have;

    b. Cal. Civ. Code § 1770(a)(9): Advertising goods or services with intent not to sell them as advertised; and

    c. Cal. Civ. Code § 1770(a)(13): Making false or

misleading statements of fact concerning reasons for, existence of, or amounts of price reductions.

125.    Defendant has violated Section 1770(a)(5) by representing that products offered for sale on its website have characteristics or benefits that they do not have. Specifically, Defendant represents that the value of their products is greater than it actually is by advertising inflated reference prices and false discounts.

126.    Defendant has violated Section 1770(a)(9) by advertising its products as being offered at a discount, when in fact Defendant do not intend to sell the products at a discount.

127.    Defendant has violated Section 1770(a)(13) by misrepresenting the regular reference price of products on the Sunglass Hut's website and by advertising false discounts and savings.

128.    Defendant's practice of misrepresenting, actively concealing, and/or failing to disclose the true prices of the products listed on its website violated and continues to violate the CLRA.

129.    Defendant's misrepresentations were likely to deceive, and did deceive, Plaintiff and reasonable consumers. Defendant knew, or should have known, that these statements were inaccurate and misleading.

130.    Defendant's misrepresentations were intended to induce reliance, and Plaintiff reasonably relied on them when making her purchase.

44

**CLASS ACTION COMPLAINT**

Defendant's misrepresentations were a substantial factor in Plaintiff's purchase decision.

131.    Defendant's deceptive practices significantly impacted Plaintiff and the members of the California Subclass. The misleading information presented was material, meaning a reasonable person would consider it heavily when deciding to buy products. This false information directly caused financial harm. Plaintiff and the members of California Subclass ended up purchasing goods they otherwise would not have purchased or spending more than the products' true value.

132.    Class-wide reliance can be inferred because Defendant's misrepresentations were material, in that a reasonable consumer would consider them important when deciding whether to buy a product and how much to pay for a product.

133.    Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the members of the California Subclass.

134.    Plaintiff and the members of the California Subclass were injured as a direct and proximate result of Defendant's conduct because they would not have purchased the products if they had known the truth, and/or they overpaid for the products because the products were sold at a price premium

**CLASS ACTION COMPLAINT**

due to the misrepresentation.

135.    Accordingly, pursuant to Cal. Civ. Code § 1780(a)(2), Plaintiff, on behalf of herself and all other members of the California Subclass, seeks injunctive relief.

136.    The practices outlined above have caused significant harm to Plaintiff, the California Subclass, and the public at large. Plaintiff and the California Subclass members' injuries were proximately caused by Defendant's unlawful and deceptive business practices. These unlawful and unfair practices are ongoing and will likely continue unless stopped. Therefore, Plaintiff seeks a permanent injunction to prevent Defendant from engaging in such deceptive tactics. Additionally, Plaintiff seeks compensation for attorney fees and costs incurred. Finally, under the CLRA, Plaintiff seeks a public injunction to protect the general public from Defendant' misleading advertising and omissions.

137.    Pursuant to Cal. Civ. Code § 1782(a), on August 1, 2024, Plaintiff's counsel served Defendant with notice of its CLRA violations by certified mail, return receipt requested. Defendant acknowledged receipt of the CLRA demand notice on August 5, 2024.

138.    Defendant has failed to provide appropriate relief for their CLRA violations within 30 days of its receipt of Plaintiff's demand notice.

**CLASS ACTION COMPLAINT**

Accordingly, pursuant to §§ 1780 and 1782(b) of the CLRA, Plaintiff is entitled to recover actual damages, punitive damages, attorneys' fees and costs, and any other relief the Court deems proper.

## COUNT VI
## VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW ("FAL")
### Cal. Bus. & Prof. Code §§ 17501 *et seq.*
### (On behalf of Plaintiff and the California Subclass)

139.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1–138 as if fully set forth herein.

140.    Plaintiff brings this claim individually, and on behalf of the members of the California Subclass against Defendant.

141.    Defendant has violated Section 17501 of the California Business and Professions Code.

142.    Defendant has engaged in false or misleading advertising in violation of the FAL. Defendant advertised, and continues to advertise, reference prices and "sale" prices that are false, misleading and/or have the tendency and likelihood to deceive reasonable consumers. *Brady v. Bayer Corp.*, 26 Cal. App. 5th 1156, 1173 (2018) ("these laws prohibit 'not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public.'"). To state a claim under the FAL "'it is necessary only

to show that "members of the public are likely to be deceived."' *Id.* (citations omitted).

143.    Defendant engaged in deceptive advertising practices within California and nationwide. These practices involved promoting its products through online platforms that contained untrue or misleading statements about the advertised goods. Notably, Defendant knew, or should have known with reasonable diligence, the information they disseminated was inaccurate.

144.    As alleged more fully above, Defendant advertises reference prices on its website along with discounts.

145.    The reference prices advertised by Defendant were not the prevailing market prices for the products within three months preceding publication of the advertisement.

146.    Defendant's reference price advertisements do not state clearly, exactly, and conspicuously when, if ever, the former reference prices prevailed. Indeed, the advertisements do not indicate whether or when the purported former reference prices were offered at all.

147.    The deceptive advertising practices employed by Defendant led Plaintiff and the members of the California Subclass to make decisions based on inaccurate information. Defendant's misrepresentations were intended to induce reliance, and Plaintiff reasonably relied on these misrepresentations

when making her purchase decision.

148.    Class-wide reliance can be inferred because Defendant's misrepresentations were material.

149.    Defendant's misrepresentations were a substantial factor and proximate cause in damages to Plaintiff and the members of the California Subclass.

150.    Plaintiff and the members of the California Subclass were injured as a direct and proximate result of Defendant' conduct because they would not have purchased the products if they had known the truth, and/or they overpaid for the products because the products were sold at a price premium due to the misrepresentation.

**<u>COUNT VII</u>**
**Violation of California's False Advertising Law, Bus & Prof. Code §§17500 *et seq*.**
**(On behalf of Plaintiff and the California Subclass)**

151.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1–150 as if fully set forth herein.

152.    Plaintiff brings this claim individually and on behalf of the California Subclass.

153.    Defendant has violated Section 17500 of the California Business and Professions Code.

154.    As alleged more fully above, Defendant has made and

**CLASS ACTION COMPLAINT**

disseminated false and misleading statements of facts in advertisements to Plaintiff and the California Subclass members by advertising false reference prices and false discounts regarding its products.

155.    Defendant's representations were likely to deceive, and did deceive, Plaintiff and reasonable consumers. Defendant knew, or should have known, that these statements were inaccurate and misleading.

156.    Defendant's misrepresentations were intended to induce reliance, and Plaintiff reasonably relied on the statements when purchasing the products. Defendant's misrepresentations were a substantial factor in Plaintiff's purchase decision.

157.    Class-wide reliance can be inferred because Defendant's misrepresentations were material in that they concerned the price of the product.

158.    Defendant's misrepresentations were a substantial factor and proximate cause in damages to Plaintiff and the members of the California Subclass.

159.    Plaintiff and the members of the California Subclass were injured as a direct and proximate result of Defendant's conduct because they would not have purchased the products if they had known the truth, and/or they overpaid for the products because the products were sold at a price premium

**CLASS ACTION COMPLAINT**

due to the misrepresentation.

## COUNT VIII
## VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW ("UCL")
### Bus. Prof. Code §§ 17200, *et seq.*
### (On behalf of Plaintiff and the California Subclass)

160.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1–159 as if fully set forth herein.

161.    Plaintiff brings this claim individually and on behalf of herself and all members of the California Subclass.

162.    The UCL prohibits and provides civil remedies for unfair competition. Its purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services. In service of that purpose, the California legislature framed the UCL's substantive provisions in broad, sweeping language. By defining unfair competition to include any "any unlawful, unfair or fraudulent business act or practice," the UCL permits violations of other laws to serve as the basis of an independently actionable unfair competition claim and sweeps within its scope acts and practices not specifically proscribed by any other law.

163.    Defendant's acts and omissions alleged herein, specifically Defendant's violations of the CLRA and FLA, constitute unfair competition and/or unlawful, unfair, or fraudulent business practices in violation of the

**CLASS ACTION COMPLAINT**

UCL.

164.    Defendant's actions and omissions have violated, and continue to violate, the "unlawful" prong of the UCL by creating misleading advertisements with inflated reference prices and false discounts. Additionally, Defendant has engaged in deceitful practices as outlined in Cal. Civ. Code §§ 1705, 1709, and 1713. Further, Defendant engaged in unlawful conduct by violating the Federal Trade Commission Act ("FTCA"), which prohibits "unfair or deceptive acts or practices in or affecting commerce" and prohibits the dissemination of false advertisements. 15 U.S.C. § 45(a)(1), 15 U.S.C. § 52(a). As the FTC's regulations make clear, Defendant's false pricing scheme violates the FTCA. 16 C.F.R. §§ 233.1, *et seq.*

165.    As further alleged herein, Defendant's conduct also violates the "deceptive" prong of the UCL in that Defendant' representations that its products were on sale, that the sale was limited in time, that the products had a specific regular price, and that the customers were being offered discounts from a higher value, were false and misleading.

166.    Defendant's material misrepresentations, omissions, and lack of disclosure are likely to mislead reasonable and potential customers, along with the general public. These practices are inherently deceptive and mislead consumers.

**CLASS ACTION COMPLAINT**

167.    Plaintiff and the members of the California Subclass relied upon Defendant's misrepresentations and omissions, as set forth above.

168.    Defendant's misrepresentations and omissions are significant because a reasonable consumer would consider this information when making purchasing decisions. Plaintiff reasonably relied upon this misleading information and would have acted differently if he had been presented with accurate details. Similarly, class-wide reliance can be inferred because Defendant's misrepresentations were material in that they concerned the price of the product.

169.    Defendant's conduct, as alleged above, was immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

170.    Defendant violated the "unfair" prong of the UCL by falsely representing that that its products were on sale, that the sale was limited in time, that the products had a regular reference price higher than the sale price, and that the customers were receiving discounts.

171.    Defendant violated established public policy by violating the CLA, the FAL, and the FTCA.

172.    Defendant's misrepresentations and omissions resulted in it receiving more money from Plaintiff and the members of the California Subclass than it rightfully deserved. This money is subject to restitution. As

a direct consequence of Defendant's unfair, unlawful, and deceptive practices, Plaintiff and the members of the California Subclass suffered financial losses.

173.    Plaintiff and the members of the California Subclass were injured as a direct and proximate result of Defendant's conduct because they would not have purchased the products if they had known the truth, and/or they overpaid for the products because the products were not worth the "regular" reference price represented by Defendant.

174.    The harm to Plaintiff and the members of the California Subclass greatly outweighs the public utility of Defendant's conduct.  False statements in connection with the sale of consumer products harms consumers and injures competition. There is no public utility to misrepresenting the price of a consumer product. This injury was not outweighed by any countervailing benefits to consumers or competition.

175.    Plaintiff and the members of the California Subclass could not have reasonably avoided the injury caused by Defendant.

176.    Without an injunction, Defendant will continue to harm Plaintiff, the members of the California Subclass, and prospective consumers at large. Defendant's misrepresentations and omissions are ongoing, and even if it were to stop temporarily, there is a risk of it repeating these deceptive

**CLASS ACTION COMPLAINT**

practices.

177.    Plaintiff, on behalf of herself and all members of the California Subclass, seeks public injunctive relief under the UCL to safeguard the general public from Defendant's deceptive discount advertising and misleading omissions.

178.    Defendant's actions have caused substantial harm to Plaintiff, the California Subclass, and the public. These practices are ongoing and are likely to continue unless stopped.

179.    Therefore, Plaintiff seeks a permanent injunction to prevent Defendant from engaging in such unlawful, unfair, and fraudulent business practices. Additionally, Plaintiff seeks restitution for the California Subclass in an amount to be determined at trial, as well as attorney fees and costs under Cal. Code Civ. Proc. § 1021.5. Further Plaintiff, on behalf of the members of the California Subclass, requests that he be awarded all relief as may be available by law, pursuant to Cal. Bus. Prof. Code § 17203.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against Defendant as follows:

A.    Certifying this action as a class action under Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure and naming Plaintiff as a

representative of the Classes and Plaintiff's undersigned attorneys as Class Counsel to represent the Classes;

B.    For an Order declaring that Defendant' conduct violated the laws referenced herein;

C.    For an Order finding in favor of Plaintiff and the Classes on all counts asserted herein;

D.    For an Order awarding actual, statutory, treble, and punitive damages as applicable;

E.    For an Order awarding pre-judgment and post-judgment interest on all amounts awarded;

F.    For injunctive relief as pleaded or as the Court may deem proper;

G.    For disgorgement and restitution to Plaintiff and the members of the Classes of all monies received or collected from Plaintiff and the members of the Classes and all other forms of equitable relief;

H.    For an Order awarding reasonable attorneys' fees and expenses and costs of suit; and

I.    For such other and further relief as the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury as to all triable issues.

**CLASS ACTION COMPLAINT**

Dated: December 19, 2024      Respectfully submitted,


By: /s/ Kyle McLean
Kyle McLean (SBN 330580))
Lisa R. Considine*
David J. DiSabato*
Leslie L. Pescia*
700 Flower Street
Suite 1000
Los Angeles, CA 90017
Telephone: 212-532-1091
Facsimile: 646-417-5967
Email : kmclean@sirillp.com
Email: lconsidine@sirillp.com
Email: ddisabato@sirillp.com
Email: lpescia@sirillp.com
*Attorneys for Plaintiff and the Proposed Class*

*Pro hac vice* forthcoming

**CLASS ACTION COMPLAINT**